UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
UNITED STATES OF AMERICA,                                    :
                                                             :     **ORDER GRANTING**
                                            Plaintiff,       :     **MOTION FOR**
         -against-                                           :     **SUMMARY JUDGMENT**
                                                             :
ABOUBACAR DRAME a/k/a SOKO DARMAY,                           :     18 Civ. 11480 (AKH)
                                                             :
                                            Defendant.       :
                                                             :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

Defendant Aboubacar Drame ("Defendant" or "Drame"), originally from Guinea, became

a naturalized citizen of the United States of America on June 22, 2012.  On December 7, 2018,

the Government commenced this action to revoke Drame's citizenship, alleging that Drame

misrepresented and concealed material facts and illegally procured his citizenship.  ECF No. 1.

The Government now moves for summary judgment on all three counts.  ECF No. 28.  For the

reasons that follow, the Government's motion for summary judgment is granted.

I.      BACKGROUND

        a.  Facts

The undisputed facts are as follows.[1] Defendant Drame was born in Guinea in 1964.  In

1995 or early 1996, Drame paid someone to smuggle him into the United States by boat.  Depo.

---

[1] In his opposition, Defendant admitted to the Government's statement of material facts, "except for any assertions
of mental state of defendant or intent." Opp. Br. 3, ECF No. 32.  However, Defendant has not provided the Court
with a counterstatement of material facts to dispute the Government's Statement of Material Facts, only a blanket
invitation to search Drame's deposition transcript.  Local Civil Rule 56.1 (c) states that "[e]ach numbered paragraph
in the statement of material facts set forth in the statement required to be served by the moving party will be deemed
to be admitted for purposes of the motion unless specifically controverted by a corresponding numbered paragraph
in the statement required to be served by the opposing party."  Because Defendant failed to abide by the Local
Rules, the Government's statement of facts is deemed admitted. See *N.Y. State Teamsters Conf. Pension &
Retirement Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (upholding strict application of local
rule deeming admitted facts uncontroverted by statements of opposing party supported by specific citations to record

Tr. 68, 70.  In August 1996, after his arrival, Drame filed a Form I-589, Application for Asylum

and for Withholding of Deportation ("1996 I-589") with the U.S. Immigration and Naturalization

Service ("INS"), using the name and biographical information of his half-brother, Soko Darmay.

*Id.* at 77.   His application for asylum was prepared by persons claiming to be immigration

experts.  In the application, Drame stated that his name was Soko Darmay, that he was born in

Liberia in 1960, that his parents were Karmo Darmey and Femata Darmay, that his wife was

Fatumata Koma, and that he had a fear of returning to Liberia, among other statements.  *Id.* at

84-89.  Drame signed the document under penalty of perjury under the name Soko Darmay.

Compl. Ex. B.

In September 1996, Drame appeared for an interview with an asylum officer, who

referred his case to immigration court because his "testimony at the asylum interview was not

credible on material points of [his] claim."  ECF No. 1-3.  Deportation proceedings were then

commenced against Defendant, under the name Soko Darmay, on September 30, 1996.  ECF No.

1-4.  Defendant appeared before an immigration judge on January 31, 1997, during which he

testified under oath that his name was Soko Darmay, that he was from Liberia, and that he was

afraid to return to Liberia.  Defendant admits that the testimony he gave was false, and that he

was coached on what to say by the people who helped prepare his asylum application.  The

Immigration Judge denied Defendant's application for asylum but granted his request for

voluntary departure.  Drame appealed, but his appeal was dismissed on December 23, 1997, and

he was granted 30 days as of the date of the order to voluntarily depart the US.  At some

---

evidence allegedly raising factual issue); *Holtz v. Rockefeller*, 258 F.3d 62, 73 (2d Cir. 2001) ("[W]e have affirmed
the grant of summary judgment on the basis of uncontested assertions in the moving party's Local Rule 56.1
statement.").

unknown point after his proceedings concluded, Drame departed the US and returned to Guinea using another individual's passport.

In March 2001, Drame again traveled from Guinea to the US; this time, using his cousin Ibrahim Drame's passport and visa.  Drame filed a second Form 1-589 ("2001 I-589") with INS in September 2001.  This time, he used his own biographical information and stated that he had a fear of returning to Guinea.  Drame stated in his application that he had never used other names, that he had never been in deportation proceedings, and that he had never applied for asylum.  He signed the 2001 I-589 under penalty of perjury, stating that the information was true and accurate.  In October 2001, Drame appeared for an interview with an INS asylum interview, during which he reaffirmed his answers on the asylum application.  Drame's was granted asylum on August 30, 2002.

In 2004, Drame filed a Form I-485, Application to Register Permanent Residence or Adjust Status ("I-485").  Drame reiterated the information included in his 2001 I-589.  He also stated that he had not "by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States or any immigration benefit."  Drame signed the I-485 under penalty of perjury.  On August 21, 2006, Drame signed an affidavit, under penalty of perjury, which stated that "to the best of my knowledge, I have never been placed under deportation or removal proceedings in the US." USCIS approved Drame's I-485 application on September 20, 2006, and granted him permanent resident status in the United States.

On February 13, 2012, Defendant filed a Form N-400, Application for Naturalization ("N-400"), with USCIS, which he signed under penalty of perjury.  He stated on the N-400 that he had never used other names, had never given false or misleading information to any US

Government official while applying for any immigration benefit, and had never lied to any US Government official to obtain entry or admission to the United States. He also stated that he had never applied for any kind of relief from deportation. Drame attended an interview with a USCIS officer on May 21, 2012 and confirmed his answers to the N-400 under oath. He then signed a revised N-400 application which contained the aforementioned representations and certified under penalty of perjury that his answers were true and correct. Drame was then approved for naturalization on June 5, 2012. On June 22, 2012, Drame took the Oath of Allegiance and became a naturalized citizen.

      b. Procedural History

The Government filed this action on December 7, 2018, seeking an order setting aside the order admitting Drame to citizenship, restraining Drame from claiming any rights or privileges in connection with his naturalization, canceling his Certificate of Naturalization, and ordering the surrender of his Certificate and any other indicia of U.S. citizenship to the U.S. Government. Gov't Br. 29, ECF No. 34. The complaint alleges three counts against Defendant. Count I alleges that Drame was never lawfully admitted for permanent residence since he procured an immigration benefit by fraud or willful misrepresentation and was therefore inadmissible. *Id.* at 13. Count II alleges that Defendant lacked the required good moral character to be admitted because he gave false testimony during the statutory period. *Id*. at 19. Count III alleges that Defendant obtained his U.S. Citizenship through willful misrepresentation and concealment of material facts during the naturalization process. *Id*. at 22. The Government now seeks summary judgment on all three counts; a finding in favor of the Government on any of the three counts requires revocation of Defendant's naturalization.

The Government argues that summary judgment is appropriate because Defendant's own admissions in his deposition show that he knew the statements on the various forms and the answers he provided in his interviews with USCIS were false, but that Drame made them anyway.   Defendant concedes that he made misstatements and omissions at issue.   However, he argues that there is a genuine dispute of material fact as to whether the statements were knowing, willful, or made with the intent to deceive.   Defendant argues that he raised certain defenses in his answer which negate Defendant's culpability, namely: reliance on immigration experts as to what answers to provide and what to withhold, duress and coercion due to fear of being sent back to Guinea, and lack of knowledge of the contents of the written applications.   Furthermore, Defendant argues that under the equitable doctrine of laches, the government should be barred from bringing this proceeding.

## II.   LEGAL STANDARD

Summary judgment is appropriate only if there are no genuine issues of material fact, entitling the moving party to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Although "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," *id.* at 247–48, summary judgment is not warranted if a "reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by citing depositions, affidavits, stipulations, or other materials or by showing "the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  Legal memoranda are not evidence and do not create issues of fact capable of

defeating an otherwise valid motion for summary judgment.  *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 526 (2d Cir. 1994).

If a party moves for final summary judgment, the responding party must raise in its opposition to the motion any defense that would preclude final summary judgment.  *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Johnson v. Bd. of Regents of Univ. of Ga.*, 263 F.3d 1234, 1264 (11th Cir. 2001); *Harper v. Delaware Valley Broadcasters, Inc.*, 743 F.Supp. 1076, 1090–91 (D. Del. 1990) (explaining that the defendant bears the burden to adduce evidence supporting affirmative defense).  The court must "view the evidence in the light most favorable to the party opposing summary judgment ... draw all reasonable inferences in favor of that party, and ... eschew credibility assessments."  *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation to defeat the summary judgment motion.  *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

In a denaturalization proceeding, the government bears the "heavy burden" of providing "clear, unequivocal, and convincing" evidence that citizenship should be revoked.  *Fedorenko v. United States*, 449 U.S. 490, 505 (1981).  The government bears the burden of such a high degree of proof in denaturalization proceedings because of the "importance of the right that is at stake."  *Id.* at 505–06; *Schneiderman v. United States*, 320 U.S. 118, 122 (1943) ("[Citizenship] once conferred should not be taken away without the clearest sort of justification and proof.").  Thus, summary judgment for the government in a denaturalization proceeding is warranted if, viewing the evidence in the light most favorable to the naturalized citizen, there is no genuine issue of material fact as to whether clear, unequivocal, and convincing evidence supports denaturalization.

III.    DISCUSSION

Under 8 U.S.C. § 1451(a), a court must revoke an order admitting an individual to citizenship and cancel the individual's certificate of naturalization if his or her naturalization was either (i) illegally procured, or (ii) procured by concealment of a material fact or by willful misrepresentation.  Citizenship is "illegally procured" if it fails to comply with any of the congressionally imposed prerequisites for acquisition of citizenship.  *See Fedorenko,* 449 U.S. at 506, 517.  The Government argues that Drame's citizenship should be revoked under either theory. These are addressed in turn.

a.    Count I- Defendant Illegally Procured an Immigration Benefit by Fraud or Willful Misrepresentation and Was Therefore Never Lawfully Admitted for Permanent Residence.

The Government first argues that Defendant was inadmissible for having procured an immigration benefit by fraud or willful misrepresentation, and therefore was never lawfully admitted for permanent residence.  To qualify for naturalization, an applicant must have been lawfully admitted to the US for permanent residence in accordance with all applicable immigration laws.  *See* 8 U.S.C. § 1427(a), 1429.  "Lawfully admitted for permanent residence" is defined as "that status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed."  8 U.S.C. § 1101(a)(20).  Admission which does not comply with the substantive legal requirements is not a lawful admission for permanent residence.  *See De La Rosa v. U.S. Dep't of Homeland Sec.*, 489 F.3d 551, 554-55 (2d Cir. 2007); 8 U.S.C. § 1159(b)(5).  An alien who "by fraud of willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit under [the INA]" is  inadmissible to the United States.  8 U.S.C. § 1182(a)(6)(C)(i).

7

Denaturalization based on the concealment of a material fact or by willful misrepresentation requires a finding that "[1] the naturalized citizen must have misrepresented or concealed some fact, [2] the misrepresentation or concealment must have been willful, [3] the fact must have been material, and [4] the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment." *Kungys v. United States*, 485 U.S. 759, 767 (1988).

The undisputed facts show that Defendant was inadmissible to the United States. Defendant concedes that he made misrepresentations about his identity on his 1996 asylum application and concealed the facts related to those proceedings and his identity in his 2001 asylum application and his 2004 application to adjust his status. These misrepresentations were willful, as they were "done intentionally and deliberately and . . . [were] not the result of an innocent mistake, negligence, or inadvertence." *Emokah v. Mukasey*, 523 F.3d 110, 116-117 (2d Cir. 2008). Drame argues that he was unaware of the contents of the written application in 1996, as he did not understand English at the time. Even so, Drame own admissions show that he confirmed this false identity under oath at the asylum interview and at his immigration hearing in front of the immigration judge. And, upon his return to the United States, he then procured an adjustment of status, knowing that he previously had used his brother's name and that he had been in removal proceedings. He affirmatively misrepresented these facts on his second asylum application, in his asylum interview, and on his I-485 in 2004, certifying this information under penalty of perjury. I therefore find that Drame's misrepresentations were willful.

I also find that Defendant's misrepresentations and concealments were material. "A misrepresented or concealed fact is "material" if it was "predictably capable of affecting," that is, had "a natural tendency to produce the conclusion that the applicant was qualified." *Kungys*, 485

U.S. at 772.  Such an influence can exist "if either (1) the alien is excludable on the true facts, or (2) the misrepresentation tends to shut off a line of inquiry which is relevant to the alien's eligibility and which might well have resulted in a proper determination that he be excluded." *Singh v. Thompson*, 2016 WL 5791403, at *4 (D.N.J. Oct. 3, 2016); *Monter v. Gonzale*s, 430 F.3d 546, 557 (2d Cir. 2005).  Defendant concedes that the misrepresentations were material but argues that there is a chance that the adjudicator may not have viewed this information as very serious, or may have granted him asylum regardless.  However, the Government need only prove a tendency to influence the decision, not that the decision must actually have been different. *United States v. Stelmokas*, 100 F.3d 302, 317 (3d Cir. 1996) (The government does not bear the burden of "produc[ing] evidence from officials that if the truth had been told the officers would have reached a different result").  Drame's misrepresentations had the effect of shutting down a line of questioning relevant to his eligibility.  *See Monter*, 430 F.3d at 557.  Had the Defendant disclosed his past identity, or that he had been in removal proceedings and his claim for asylum had been denied, it is reasonable to assume that such information would have influenced a decisionmaker to investigate further into Drame's background and to determine that he was not suitable for admissibility.  It therefore cannot be said that Defendant's past immigration history is immaterial to a decisionmaker deciding admissibility.

Finally, these misrepresentations were made for the purpose of procuring immigration benefits.  Citizenship is "procured" as a result of the concealment or misrepresentation if the "misrepresentation results in the applicant's successful naturalization."  *United States v. Rebelo*, 646 F. Supp. 2d 682, 690 (D.N.J. 2009), aff'd, 394 Fed.Appx. 850 (3d Cir. 2010); *see also United States v. Hirani*, 824 F.3d 741, 750 (8th Cir. 2016) ("An applicant 'procures' naturalization on the basis of a misrepresentation if there is a causal connection between the

misrepresentation and the acquisition of citizenship.").  "[A] person whose lies throw investigators off a trail leading to disqualifying facts gets her citizenship by means of those lies—no less than if she had denied the damning facts at the very end of the trail."  *Maslenjak v. United States*, 137 S. Ct. 1918, 1929 (2017).  Drame's lies concealed facts that would have disqualified him from gaining permanent residence status.  He was granted asylum and his permanent residence status, by virtue of the misrepresentations of his prior immigration history. I therefore find that Defendant was inadmissible at the time he obtained lawful permanent resident status, and the Government is entitled to summary judgment on Count I.

       b.  Count II- The Defendant Illegal Procured his Citizenship Because He Lacked the Required Good Moral Character to Become A Naturalized Citizenship.

Next, the Government argues that because the Defendant gave false testimony, he lacked the required good moral character to become a naturalized citizen.  To be eligible for naturalization, an applicant must establish a showing of good moral character for the relevant statutory period, which runs from the five years immediately preceding the filing of his naturalization application (N-400) and continues until the oath of allegiance is administered.  *See* 8 U.S.C. § 1427(a)(3); 8 C.F.R. § 316.10(a)(1).  The Court must make a determination regarding the applicant's moral character during the statutory period, but it "may take into consideration, as a basis for its determination, the applicant's conduct and acts at any time prior to [the statutory period]."  8 C.F.R. § 316.10(a)(2).  An applicant is statutorily precluded from establishing good moral character if, during the statutory period, he has given false testimony for the purpose of obtaining an immigration benefit.  *See* 8 U.S.C. § 1101(f)(6); 8 C.F.R. § 316.10(b)(2)(vi). Section § 1101(f)(6) "denominates a person to be of bad moral character on account of having given false testimony if he has told even the most immaterial of lies with the subjective intent of obtaining immigration or naturalization benefits."  *Kungys v. United States*, 485 U.S. 759, 764

(1988).  False statements are limited to oral statements made under oath.  *Id.* at 781.  A court may infer "intent to falsify and deceive from the mere untruthful response to a question, the clarity of which leaves little or no room for a reasonable explanation of misunderstanding." *United States v. Profaci,* 274 F.2d 289, 292 (2d Cir. 1960).

The undisputed facts establish that Defendant lacked the statutorily required good moral character for naturalization because he made false statements during the statutory period. Defendant testified that he had never given false or misleading information to any U.S. Government official while applying for any immigration benefit or to prevent deportation, exclusion, or removal, that he had never lied to a U.S. Government official to gain entry or admission into the US, and that he had never applied for any kind of relief from removal, exclusion, or deportation.  Defendant admits that the statements he gave during his naturalization interview were false, and that he knew the testimony he gave was false.  These statements were made to obtain an immigration benefit, namely, naturalization, as Drame made these statements during the interview to determine his eligibility for naturalization.  Defendant also admits that he provided such testimony to avoid returning to Guinea.  Because Drame provided false testimony to obtain his naturalization, he was statutorily barred from showing that he had the required good moral character for naturalization and was therefore ineligible for naturalization under 8 USC 1427(a)(3).  I therefore grant summary judgment for the Government on Count II.

      c.   Defendant Obtained His U.S. Citizenship Through Willful Misrepresentation and Concealment of Material Facts During the Naturalization Process

Finally, the Government argues that Drame made willful misrepresentations and concealed material facts during the naturalization process.  While similar to the illegal procurement theory of Count I, the procurement of naturalization is a separate and independent basis for denaturalization from whether alien illegally procured his permanent residence.  As

previously mentioned, the Court must find four elements to establish willful misrepresentation or concealment.  *See supra* 8-9 (citing *Kungys*, 485 U.S. at 767).

Here, I find that the Defendant concealed and misrepresented material statements at the naturalization stage.  Defendant misrepresented the fact that he had not used other names in the past, that he had provided false or misleading information to US Government officials in his previous immigration filings, and that he had previously applied for relief from deportation on his N-400.  These misrepresentations are conclusively established by the signed N-400 itself which certifies that the contents of the application are true and correct, *see United States v. Oddo,* 314 F.2d 115, 117 (2d Cir. 1963), as well as Defendant's own admissions that the N-400 contains various misrepresentations.

Furthermore, Drame's misrepresentations were willful and not the product of mistake, negligence, or inadvertence.  *Emokah,* 523 F.3d at 116-17.  "[A]pplicants are assumed to understand the questions being asked of them on naturalization forms and reply accordingly." *United States v. Gayle,* 996 F. Supp. 2d 42, 55 (D. Conn. 2014).  Drame admits that he signed the application and certified under penalty of perjury that he knew the contents of his application and that the information was true and correct.  Moreover, after certifying his initial N-400, Drame did so again in the presence of an immigration officer at his naturalization interview on an N-400 which contained other revisions but included the same misrepresentations.  Despite the opportunity to correct such information, Drame chose again to certify the revised N-400.  His attestations constitute deliberate concealment of his immigration history and his prior false statements.  *See United States v. Hirani,* 824 F.3d 741, 749 (8th Cir. 2016) (finding willfulness where applicant signed under penalty of perjury that he only had one name); *Oddo*, 314 F.2d at

117 (the District Court was "free to conclude [Defendant]'s act of signing his name to this form constituted concealment of prior [criminal history]").

I also find that Defendants' misrepresentations were material, as it would have the natural tendency to influence the decision of the adjudicator. *Kungys*, 485 US at 771-72. Drame's misrepresentations went to the heart of his claim for naturalization- his prior immigration history and the representations that he made in process of obtaining lawful status in the United States. Had Drame disclosed such information, a decisionmaker would have been aware that Drame was not statutorily eligible for naturalization, and his past misrepresentations could certainly have influenced the decisionmaker.

Finally, Defendant procured naturalization as a result of the misrepresentations and concealments. *See Kungys*, 485 US at 767. Defendant swore that the information contained within his N-400 was true and correct, that he had not used any other names, that he had never given false information while applying for an immigration benefit, that he had never lied to gain entry into the United States, and that he had never applied for relief from deportation. These misrepresentations, if they had been disclosed, would have revealed to the decisionmaker that Defendant was actually statutorily ineligible to naturalize on numerous grounds, including that he was never lawfully admitted to permanent residence. *See United States v. Latchin,* 554 F.3d 709, 714 (7th Cir. 2009) (Courts consider whether it is "fair to infer that the citizen was actually ineligible" for naturalization). Drame therefore secured his naturalization by concealing facts and by willful misrepresentation, and the government is entitled to summary judgment on Count III.

IV.    Defenses

13

Defendant argues that even if the government has satisfied its prima facie burden for summary judgment, he should be entitled to present defenses of reliance on counsel and duress/coercion at trial, which would negate his willfulness or intent to deceive the Government. He also argues that he is entitled to the defense of laches. These arguments are unavailing.

        a.  Laches

Defendant first argues that he should be allowed to present the defense of laches, as this proceeding came roughly six years after Drame's naturalization. The Supreme Court has explained that a "district court lacks equitable discretion to refrain from entering a judgment of denaturalization against a naturalized citizen whose citizenship was procured illegally or by willful misrepresentation of material facts." *Fedorenko,* 449 U.S. at 517. Courts within this district have questioned whether laches is applicable in denaturalization actions and have noted that it would be "difficult for a defendant who had obtained his citizenship through fraud to establish prejudice on the ground that he changed his position as a result of the Government's delay in pursuing denaturalization." *See United States v. Lemos*, No. 08 Civ. 11144 (KMW), 2010 WL 1192095, *2–3 (S.D.N.Y. Mar. 26, 2010) (explaining that the Supreme Court left open the question of whether laches can bar a denaturalization action).

Even if the defense of laches was available in a denaturalization proceeding, Defendant has not provided any evidence which would meet the standard. Laches requires proof of "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Costello v. United States,* 365 U.S. 265, 282 (1961). Defendant has not provided any factual support which would show a lack of diligence by the government, or any prejudice to himself from such lack of diligence. He only makes conclusory allegations that the Government should have been able to discover Drame's previous identity through his

fingerprints.  I therefore find that defendant has failed to provide any evidence that would entitle him to the defense of laches.

        b.   Reliance on Counsel

Defendant next argues that he lacked the requisite willfulness or intent because he relied on the advice of counsel. Mot. 11.  He notes that he repeatedly stated in his deposition that he only followed the commands of the people who assisted him in the preparation of the immigration documents. This argument also fails.

As an initial matter, the willfulness standard does not require an intent to deceive, only to deliberately make the representation.  *See Singh v. Gatner,* (citing *Emokah v. Mukasey*, 523 F.3d 110, 116-17 (2d Cir.2008) ("An act is done willfully if it is done intentionally and deliberately and if it is not the result of innocent mistake, negligence or inadvertence."); *see also Forbes v. I.N.S.*, 48 F.3d 439, 442 (9th Cir.1995) (explaining that in the context of the INA, "the requirement ... of fraud or willful misrepresentation is satisfied by a finding that the misrepresentation was deliberate and voluntary[;][p]roof of an intent to deceive is not required; [r]ather, knowledge of the falsity of a representation is sufficient.").  Defendant does not claim that the misrepresentations were the product of any such mistake.

Assuming, but not deciding, that the advice of counsel defense is available in the context of a denaturalization proceeding, Drame has provided no information to meet the various elements of the advice of counsel defense.  In order to benefit from an advice of counsel defense, a party must show that he "(1) honestly and in good faith sought the advice of counsel; (2) fully and honestly la[id] all the facts before his counsel; and (3) in good faith and honestly follow[ed] counsel's advice, believe it to be correct and intending that his acts be lawful."  *United States v. Colasuonno*, 697 F.3d 164, 181 (2d Cir. 2012); *see also Markowski v. SEC,* 34 F.3d 99, 104-05

(2d Cir. 1994) (stating that the defendant must "show that he made complete disclosure to counsel, sought advice as to the legality of his conduct, received advice that his conduct was legal, and relied on that advice in good faith.").  Drame only provides conclusory statements that those who were helping him prepare the application coached him on what to say.  He does not state what information he provided, when such advice occurred, or for which application the advice was given.

More importantly, the Defendant has not and cannot cite any information to support the fact that he acted in good faith and intended his acts to be lawful.  Rather, Defendant's admissions show that he was counseled not to follow the law and to lie.  Defendant claims he was told by those who were preparing his forms that he would face immigration consequences for providing truthful responses.  Defendant feared that he would be deported to Guinea if he acted in good faith and told the truth.  He chose to provide false answers to avoid that outcome and to repeatedly certify under penalty of perjury that the representations within his forms were true and accurate.  Drame cannot now seek to avoid the consequences of his own misrepresentations by alleging that he thought he was acting lawfully.  *See Williamson v. United States,* 207 U.S. 425, 453 (1908) ("No man can willfully and knowingly violate the law and excuse himself from the consequences thereof by pleading that he followed the advice of counsel."); *see also Singh v. Gantner,* No. 07 CIV. 772, 2008 WL 3152959, at *3 (S.D.N.Y. Aug. 5, 2008) (finding that advice of counsel defense was unavailable where Defendant did not deny that his false statements were deliberate and voluntary, only that he thought was permitted to misrepresent despite signing application under penalty of perjury that the application was true and correct).  Thus, I find that Defendant is not entitled to the advice of counsel defense.

     c.  Duress

Finally, Defendant argues that there is a genuine dispute of fact, as his misrepresentations were the product of duress or coercion.  This argument also fails.  As the Government notes, the only claim of duress presented in Defendant's answer relates only to his initial fraudulent application in 1996 and his second application in 2001.  *See* Answer 10-11.  Any claim of duress is therefore irrelevant to the Government's arguments with respect to misrepresentations in Drame's I-485 application to adjust his status, the false testimony provided during this naturalization interview, or the misrepresentations in his naturalization application.

Even if Defendant had asserted a defense of duress against all of his statements, and even if the defense of duress is available in a denaturalization proceeding, Defendant has provided no factual support for the claim of duress or coercion.  In order to establish duress, a Defendant must show: (1) threat of force directed at the time of the defendant's conduct; (2) a threat sufficient to induce a well-founded fear of impending death or serious bodily injury; and (3) a lack of a reasonable opportunity to escape harm other than by engaging in illegal activity. *United States v. Podlog,* 35 F.3d 699, 704 (2d Cir. 1994).  Defendant has not provided any factual information to substantiate any of these elements. Instead, Defendant argues that he was afraid that he would not be granted asylum and that he would have to return to Guinea.  He provides no information regarding any specific threat that would induce any fear of impending death or injury, nor does he submit evidence that he had no reasonable opportunity to escape such harm. *Podlog,* 35 F.3d at 704. That generalized fear, without more, cannot sustain a claim of duress. The fear of returning to one's country of origin is inherent in every asylum case, and allowing an applicant seeking legal status in the United States by misrepresenting and concealing facts would defeat the entire purpose of requiring truthful and accurate disclosures in their application.  Thus, Defendant has not met his burden of establishing that he is entitled to a defense of duress.

Because Defendant has not established a genuine dispute of material fact and has not provided any factual support for his claimed defenses, I find that Defendant Drame illegally procured his citizenship and procured his citizenship by concealment of material facts and by willful misrepresentation.  Summary judgment is hereby granted on all counts in favor of the Government.  Defendant Drame's citizenship is hereby revoked, and the order admitting Drame to citizenship is set aside.  Defendant's Certificate of Naturalization, No. 35166807, is hereby cancelled, effective as of June 22, 2012, and Defendant is restrained from claiming any benefits, privileges, or advantages of United States citizenship in connection with his June 2012 naturalization.  Defendant is instructed to surrender his certificate of naturalization, and any other indicia of citizenship that he may possess to the counsel for the U.S. Government within ten days of this order.  Oral argument, currently scheduled for April 6, 2021, is hereby cancelled. The Clerk is instructed to enter judgment for the Government, and to terminate the open motion, ECF No. 28.


          SO ORDERED.

Dated:         April 1, 2021                    _____ /s/ Alvin K. Hellerstein_____
         New York, New York           ALVIN K. HELLERSTEIN
                                     United States District Judge